Floyd W. Bybee, SB 012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Dee F. Baginski; | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| MCVT Motors, LLC, doing business as Camelback Ford Lincoln Mercury; | |
| Defendant. | (Jury Trial Demanded) |

## Preliminary Statement

1.    Defendant obtained and used, and caused other potential lenders to obtain and or use, Plaintiff's consumer credit reports without a legal or permissible purpose in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. Defendant also fraudulently misrepresented and illegally usurped Plaintiff's personal identification and credit information for its own purposes and financial benefit. Plaintiff seeks to recover statutory damages,

1  actual damages, punitive damages, costs and attorney's fees.

2  **Jurisdiction and Venue**

3  2. Jurisdiction over this action is premised upon 15 U.S.C. § 1681p

4  and 28 U.S.C. § 1331 and 1337.

5  3. Venue is proper in this District under 28 U.S.C. § 1391(b), in that

6  the Defendant's conduct complained of occurred within the District.

7  **Parties**

8  4. Plaintiff is an individual residing in Pinal County, Arizona.

9  5. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10  6. Defendant MCVT Motors, LLC is a Delaware limited liability

11  company doing business in Arizona under the name of Camelback

12  Ford Lincoln Mercury, with its principal place of business located

13  at 1330 E. Bell Road, Phoenix, Arizona 85014.

14  7. Camelback Ford is in the business of selling new and used automo-

15  biles to Arizona consumers.

16  8. Camelback Ford is a "person" as defined by 15 U.S.C. § 1681a(b).

17  **Factual Allegations**

18  9. On or about May 28, 2017, Plaintiff went to Camelback Ford to

19  purchase a new Ford vehicle.

20  10. While at the dealership, Plaintiff completed a credit application in

21  connection with the purchase of a new Ford Edge.

22  11. As part of the credit approval process, on May 27, 2017 Camelback

23  Ford obtained consumer reports on Plaintiff from Trans Union,

24  Equifax and Experian.

25  12. On May 31, 2017, Plaintiff and Camelback Ford finalized the

- 2 -

1   purchase and sale of the Ford Edge to Plaintiff.

2   13.   As of May 31, 2017, Plaintiff's purchase and financing of the Ford
3         Edge was complete and final.

4   14.   During this same time period, Plaintiff's son-in-law, Kristopher
5         Stading, was also negotiating to purchase a new Ford F-150 pickup
6         truck from Camelback Ford.

7   15.   In the process of trying to get Mr. Stading approved for financing,
8         Camelback Ford requested and obtained consumer reports on
9         Plaintiff.

10  16.   During this process, Camelback Ford also submitted loan applica-
11        tions which fraudulently listed Plaintiff as a co-signor with Mr.
12        Stading to purchase the F-150 truck.

13  17.   Plaintiff never agreed to be a co-signor for Mr. Stading's purchase
14        of the F-150 truck.

15  18.   Plaintiff never signed a credit application in connection with Mr.
16        Stading's purchase or financing of the F-150 truck.

17  19.   Plaintiff never authorized Camelback Ford to request or obtain her
18        consumer credit reports in connection with Mr. Stading's purchase
19        of the F-150 truck.

20  20.   Mr. Stading never asked Plaintiff to co-sign for his purchase of the
21        F-150 truck.

22  21.   Camelback Ford did not have a permissible purpose to obtain a
23        consumer report on Plaintiff in connection with Mr. Stading's
24        purchase of the F-150 truck.

25  22.   Camelback Ford took it upon itself to submit fraudulent loan

1    applications to numerous lenders without disclosing that it did not

2    have either Plaintiff's or Mr. Stading's permission to do so.

3    23.   Camelback Ford knew that its representation to these prospective

4    lenders that Plaintiff had agreed to co-sign for Mr. Stading was

5    false.

6    24.   As a result of its fraudulent misrepresentations and its illegal

7    actions, Camelback Ford caused at least 17 different financial

8    institutions to illegally obtain consumer reports on Plaintiff with-

9    out her permission, and without any permissible purpose under the

10    FCRA.

11    25.   Once she learned that she had been listed as a co-signor with Mr.

12    Stading to purchase the F-150 truck, Plaintiff immediately con-

13    tacted Camelback Ford by text and by phone.

14    26.   Camelback Ford never responded to either of Plaintiff's messages.

15    27.   Camelback Ford did respond to Plaintiff's complaints to the Better

16    Business Bureau and the Arizona Attorney General's office.

17    28.   On July 19, 2017, Camelback Ford sent a letter to Equifax request-

18    ing that it remove the inquiries made by Camelback Ford on June

19    1, 2017 and June 14, 2017.

20    29.   On July 19, 2017, Camelback Ford sent a letter to Trans Union

21    requesting that it remove the inquiries made by Camelback Ford

22    on June 9, 2017, June 13, 2017, and June 14, 2017.

23    30.   On July 19, 2017, Camelback Ford sent a letter to Experian re-

24    questing that it remove the inquiries made by Camelback Ford on

25    May 29, 2017, May 30, 2017, June 9, 2017, June 13, 2017, and

1    June 14, 2017.

2    31.   In June 2017, Plaintiff received a declination letter dated June 9,

3          2017 from Bellco Credit Union concerning the fraudulent loan

4          application submitted by Camelback Ford with Plaintiff as a co-

5          signor.

6    32.   In June 2017, Plaintiff also received a declination letter dated June

7          10, 2017 from Public Service Credit Union concerning the fraudu-

8          lent loan application submitted by Camelback Ford with Plaintiff

9          as a co-signor.

10   33.   In June 2017, Plaintiff received a declination letter dated June 12,

11         2017 from Credit Union West concerning the fraudulent loan

12         application submitted by Camelback Ford with Plaintiff as a co-

13         signor. The letter stated that it concerned a credit application from

14         Camelback Ford Lincoln Mercury, and that the co-borrower was

15         STADING, KRISTOPHER.

16   34.   In June 2017, Plaintiff received a declination letter dated June 13,

17         2017 from First Credit Union concerning the fraudulent loan

18         application submitted by Camelback Ford with Plaintiff as a co-

19         signor.

20   35.   In June 2017, Plaintiff also received a declination letter dated June

21         13, 2017 from Great Lakes Credit Union concerning the fraudulent

22         loan application submitted by Camelback Ford with Plaintiff as a

23         co-signor.

24   36.   In June 2017, Plaintiff received a declination letter dated June 14,

25         2017 from CRB Auto concerning the fraudulent loan application

submitted by Camelback Ford with Plaintiff as a co-signor. The letter stated it concerned a credit application from CAMELBACK FORD LINCOLN.

37.   In June 2017, Plaintiff also received a declination letter dated June 19, 2017 from Deer Valley Credit Union concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor. The letter stated it concerned a loan request of $46,339.52, which was significantly greater than the amount needed to finance the Ford Edge.

38.   In June 2017, Plaintiff received a declination letter dated June 19, 2017 from First Tech Federal Credit Union concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor.

39.   In June 2017, Plaintiff received a declination letter dated June 23, 2017 from BBVA Compass bank concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor. The letter stated in part "Thank you for your recent loan application which was submitted to BBVA Compass on your behalf by CAMELBACK FORD."

40.   In June 2017, Plaintiff received a declination letter dated June 23, 2017 from Ally Capital concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor. The letter stated it concerned the credit sale of a 2017 Ford F

41.   In June 2017, Plaintiff received a second declination letter dated June 23, 2017 from Ally Capital concerning the fraudulent loan

application submitted by Camelback Ford with Plaintiff as a co-signor. The letter also stated it concerned the credit sale of a 2017 Ford F-150.

42. In June 2017, Plaintiff received a third declination letter dated June 27, 2017 from Ally Capital concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor. The letter once again stated it concerned the credit sale of a 2017 Ford F-150.

43. In June 2017, Plaintiff received a declination letter dated June 23, 2017 from BMO Harris bank concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor.

44. In July 2017, Plaintiff received a declination letter dated July 5, 2017 from Citizens One Auto Finance concerning the fraudulent loan application submitted by Camelback Ford with Plaintiff as a co-signor. The letter stated in part: "Collateral: 2017 Ford F-150," and that it concerned "your loan application submitted on 06/14/2017 by CAMELBACK FORD LINCOLN."

45. The credit reports obtained by Camelback Ford and the other lending institutions, are "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

46. At the time these inquires were made, Plaintiff had not applied for nor sought credit from Camelback Ford or any of the other financial institutions as a co-signor with Mr. Stading to purchase the F-150 truck.

- 7 -

47.   At the time these inquires were made, Plaintiff had not submitted a credit application to Camelback Ford as a co-signor for Mr. Stading, nor had she indicated that she was interested in purchasing the F-150 truck from Camelback Ford on credit.

48.   At the time these inquires were made, Plaintiff had not given Camelback Ford permission to access her credit report for any purpose.

49.   At the time these inquires were made, Camelback Ford had never conveyed to Plaintiff that it would be requesting a credit report on her in connection with the sale of the F-150 to Mr. Stading.

50.   At the time these inquires were made, Camelback Ford had never asked Plaintiff for her date of birth or her Social Security Number, nor was this information provided to Camelback Ford by Plaintiff at that time.

51.   At the time these inquires were made, Plaintiff had not provided Camelback Ford with written instructions authorizing Camelback Ford to obtain a consumer report on her.

52.   At the time these inquires were made, Plaintiff had not made an inquiry about credit, or initiate any credit transaction with Camelback Ford concerning the F-150 truck.

53.   At the time these inquires were made, Plaintiff had no existing business relationship which would have made Camelback Ford's inquires permissible under the FCRA.

54.   At the time these inquires were made, Camelback Ford had no legitimate business need for obtaining the consumer reports on

Plaintiff.

55.   At the time these inquires were made, Camelback Ford had no permissible purpose as defined by the FCRA for obtaining the consumer reports on Plaintiff.

56.   At the time Camelback Ford made its inquiries, it knew that it did not have a permissible purpose to access Plaintiff's consumer reports.

57.   Upon information and belief, Camelback Ford obtained and used the personal information on Plaintiff, such as birth date, social security number, etc., from its records when Plaintiff had earlier purchased the Ford Edge from Camelback Ford.

58.   The actions of Camelback Ford complained of herein have caused harm and damages to Plaintiff within the State of Arizona.

59.   Camelback Ford knew that its actions in obtaining consumer reports on Plaintiff without a permissible purpose would cause Plaintiff harm and damages.

60.   Camelback Ford accessed Plaintiff's credit information with the hope of getting the financing approved to sell the F-150 to Mr. Stading.

61.   Upon information and belief, at the time Camelback Ford obtained Plaintiff's consumer reports, Camelback Ford had a policy of regularly ignoring the requirements of the FCRA and regularly obtaining credit reports on consumers without permission and without a legally permissible purpose.

**Count I.   Violation of FCRA**

***Negligently Obtaining Consumer Report***

***Without Permissible Purpose***

62.   Plaintiff incorporates the preceding paragraphs.

63.   Camelback Ford acted negligently in requesting and obtaining
Plaintiff's credit reports without a permissible purpose.

64.   Camelback Ford acted negligently in submitting credit applications
with Plaintiff as a co-signor for Mr. Stading.

65.   Camelback Ford acted negligently in submitting credit applications
with Plaintiff as a co-signor for Mr. Stading which caused other
financial institutions to acquire consumer reports on Plaintiff
without a permissible purpose.

66.   Camelback Ford's conduct in obtaining Plaintiff's credit reports
and causing others to obtain consumer reports on Plaintiff, and
using those reports, without a permissible purpose violated 15
U.S.C. §1681b(f).

67.   As a result of Camelback Ford's violation of the FCRA, Plaintiff
has suffered an invasion privacy, damage to credit reputation,
emotional stress damages, and other actual damages.

WHEREFORE, Plaintiff requests that this Court enter judgment
in her favor and against defendant Camelback Ford as follows:

a.      pursuant to 15 U.S.C. § 1681*o*(a)(1), award her actual
damages for each impermissible access of her credit report;

b.      pursuant to 15 U.S.C. § 1681*o*(a)(2), award costs of the action
and reasonable attorney fees; and

1    c.    grant such other and further relief as the court deems just

2          and proper.

3                   **Count II.   Violation of FCRA**

4                   ***Willfully Obtaining Consumer Report***

5                   ***Without Permissible Purpose***

6    68.   Plaintiff incorporates the preceding paragraphs.

7    69.   Camelback Ford acted willfully in requesting and obtaining Plain-

8          tiff's credit reports without a permissible purpose.

9    70.   Camelback Ford acted willfully in submitting credit applications

10         with Plaintiff as a co-signor for Mr. Stading.

11   71.   Camelback Ford acted willfully in submitting credit applications

12         with Plaintiff as a co-signor for Mr. Stading, which caused other

13         financial institutions to acquire consumer reports on Plaintiff

14         without a permissible purpose.

15   72.   Camelback Ford's conduct in obtaining Plaintiff's credit reports

16         and causing others to obtain consumer reports on Plaintiff, and

17         using those reports, without a permissible purpose violated 15

18         U.S.C. §1681b(f).

19   73.   As a result of Camelback Ford's violation of the FCRA, Plaintiff

20         has suffered an invasion privacy, damage to credit reputation,

21         emotional stress damages, and other actual damages.

22         WHEREFORE, Plaintiff requests that this Court enter judgment

23   in her favor and against defendant Camelback Ford as follows:

24   a.    pursuant to 15 U.S.C. § 1681n(a)(1)(A), award her actual

25         damages, or not less than $100 and not more than $1,000 for

- 11 -

each impermissible access of her credit report, whichever is greater;

b.    pursuant to 15 U.S.C. § 1681n(a)(2), award such punitive damages as the Court deems appropriate;

c.    pursuant to 15 U.S.C. § 1681n(a)(3), award costs of the action and reasonable attorney fees; and

d.    grant such other and further relief as the court deems just and proper.

## Count III.

## Violation of Arizona Consumer Fraud Act

74.   Plaintiff incorporates the preceding paragraphs.

75.   Camelback Ford used deceptive and or unfair acts or practices, made false representations, and or used fraud in connection with the sale of merchandise.

76.   Such deception, false pretense, false promise, misrepresentation, and omission of material information were made in connection with sale of merchandise.

77.   Camelback Ford intended that Plaintiff and others rely upon such deception, false pretense, false promise, misrepresentation, and omission of material information.

78.   The financial lenders relied on such deception, false pretense, false promise, misrepresentation, and omission of material information, and accessed Plaintiff's consumer reports.

79.   Plaintiff suffered damages as result of the deception, false pretense, false promise, misrepresentation, and omission of mate-

1    rial information made by Camelback Ford.

2    80.   In violating the ACFA, Camelback Ford acted with an evil mind,

3          intending to economically injure Plaintiff or consciously disregard-

4          ing the substantial risk that its conduct would cause significant

5          harm to Plaintiff.

6    81.   Punitive damages are proper because of harm to the consumers

7          caused by similar practices.

8    82.   As a result of Camelback Ford's violations of the ACFA, Plaintiff

9          has suffered damages in an amount to be determined by trial.

10   83.   Camelback Ford's violations of the ACFA were willful.

11   84.   As a result of Camelback Ford's actions, Plaintiff has suffered

12         damages including an invasion privacy, damage to credit reputa-

13         tion, emotional stress damages, and other actual damages.

14         WHEREFORE Plaintiff requests that this Court enter judgment in

15   her favor and against defendant Camelback Ford as follows:

16         a.    award her actual damages;

17         b.    award such punitive damages as the Court deems appropri-

18               ate;

19         c.    award costs of the action and reasonable attorney fees; and

20         d.    grant such other and further relief as the court deems just

21               and proper.

22                        **Demand for Jury Trial**

23   Plaintiff hereby demands a jury trial on all issues so triable.

24

25

1

2       RESPECTFULLY SUBMITTED:  December 5, 2017  .

3

4                            s/ Floyd W. Bybee

                           Floyd W. Bybee, #012651

5                         **BYBEE LAW CENTER, PLC**

                         90 S. Kyrene Rd., Ste. 5

6                         Chandler, AZ 85226-4687

                         Office: (480) 756-8822

7                         Fax: (480) 302-4186

                         floyd@bybeelaw.com

8

                         Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25